UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v. Case No.: 5:21cr25/TKW/MAL
5:23cv144/TKW/MAL

LYNN PRICE,
Defendant.

---

**REPORT AND RECOMMENDATION**

Lynn Price (hereinafter "Ms. Price") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence based on two grounds. ECF No. 66. In Ground One, Ms. Price argues that the district court improperly included loss from a dismissed count (Count Five) in calculating the loss amount under the Sentencing Guidelines and that the district court should have used the amount she was ordered to pay for restitution as the loss amount. *Id.* at 4. In Ground Two, Ms. Price alleges ineffective assistance of counsel based on the failure of her defense lawyer, Maria Dykes (hereinafter "Attorney Dykes"), to: (1) address Ms. Price's objections to the Presentence Investigation Report, (2) advise Ms. Price of possible grounds to appeal, and (3) advise the court that the sentence imposed would impact Ms. Price's ability to pay restitution. *Id.* at 5.

After careful consideration of the record, including the Government's response (ECF No. 70), and the relevant law, I recommend the Section 2255 motion be denied without an evidentiary hearing. Ground One fails because Ms. Price's argument erroneously conflates the amount ordered for restitution and the calculation of loss. Moreover, Ground One is procedurally defaulted because Ms. Price attempts to raise a new challenge to her sentence through this Section 2255 motion that could have been, but was not, raised on direct appeal. Ground Two fails because Ms. Price cannot demonstrate that Attorney Dykes' performance fell below professional standards or resulted in error that was prejudicial to the outcome of her case.

## I. BACKGROUND

On July 20, 2021, a federal grand jury in the Northern District of Florida returned an indictment charging Ms. Price with five counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, taking place between July 27, 2016, and March 18, 2020. ECF No. 1. The offense conduct involved Ms. Price's misappropriation of funds for personal use while she was serving as a property manager for several condominium homeowners' associations. ECF No. 49 at ¶ 14.

On February 11, 2022, Ms. Price entered a guilty plea to Counts One through Four of the indictment. ECF No. 37-39. Count Five of the indictment was dismissed

on the Government's motion in accordance with the Plea Agreement. ECF No. 37 at ¶ 2.a; ECF No. 64 at 35.

In calculating Ms. Price's guideline range, paragraph 26 of the Presentence Investigation Report attributed a total loss amount of $517,104.78 to Ms. Price, resulting in a 12-level increase to her offense level. ECF No. 49 at ¶¶ 18, 26. Attorney Dykes filed an objection to the amount, contending the loss should only be $344,729.41.[1] ECF No. 47 at 1-2; ECF No. 49 at ¶ 108.

Both the $517,104.78 in the Presentence Investigation Report and the $344,729.41 proposed by Ms. Dykes fell within the same loss bracket of $250,000 to $550,000 in §2B1.1(b)(1)(G), and both included $86,252.32 in intended loss to the St. Andrews Harbor Condo Association (SAHCA) attributed to the dismissed charge in Count Five. ECF No. 49 at ¶¶ 14, 17-18; ECF No. 47 at 1-2. Because resolving the objection would have no effect on Ms. Price's guideline range, the court, with the consent of the parties, modified the Presentence Investigation Report

[1] Attorney Dykes calculated loss using Price's transfer of $196,402.55 from Coastal Property Services to a personal account, and transfers of $46,041.40 and $16,032.14 from Greenwood Cadence to a personal account, making a total of $258,476.09. ECF 47 at 1-2. In addition, the $86,252.32 in intended loss to SAHCA was included, resulting in a total loss of $344,729.41. *Id.* Attorney Dykes noted that an additional loss to Greenwood Cadence in the amount of $170,500 should not be included because it "was transferred from the Greenwood Cadence account to the Coastal Property Services account … [and] already taken into account in the $196,402.55 transfer from Coastal Property Services to Mrs. Price's personal account." *Id.*

to note each side's position on the loss amount but did not resolve the objection. ECF No. 64 at 9-11; ECF No. 52 at ¶ 1.B.4.

With a total offense level of 20[2] and a criminal history category of I, Ms. Price's guideline imprisonment range was 33 to 41 months. ECF No. 49 at ¶ 78. On June 8, 2022, the district court sentenced Ms. Price to the bottom of the range, 33 months of imprisonment, to be served concurrently as to each count, followed by three years of supervised release.[3] ECF No. 62. Ms. Price was ordered to pay restitution in the amount of $233,065.85. *Id.* at 6.

Ms. Price did not appeal. She timely filed her Section 2255 motion on May 25, 2023.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2255 Standard

A Section 2255 motion to vacate, set aside, or correct a sentence "does not

---

[2] Ms. Price's base offense level was 7 under § 2B1.1(b)(1)(G). ECF No. 49 at ¶ 25. She received a 2-level increase for the specific offense characteristics of 10 or more victims and substantial financial hardship under § 2B1.1(b)(2)(A)(i) and (ii). *Id.* at ¶ 27. The loss amount, falling in the bracket between $250,000 and $550,000.00, added 12 levels under § 2B1.1(b)(1)(G). *Id.* at ¶ 26. Ms. Price received an additional 2-level increase for her role in the offense for abusing a position of private trust under §3B1.3 *Id.* at ¶ 29. For accepting responsibility and timely notifying authorities of her intention to enter a guilty plea, Ms. Price received a full 3-level reduction under § 3E1.1(a) and (b). *Id.* at ¶¶ 33 and 34.

[3] Ms. Price finished her term of imprisonment, *see* https://www.bop.gov/inmateloc/, but she is still on supervised release. Therefore, her motion is not moot. *See, e.g., United States v. Babcock*, 40 F. 4th 1172, 1176 n. 3 (10th Cir. 2022).

provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A grant of relief under Section 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988).

A Section 2255 motion is not a substitute for a defendant's direct appeal. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). Procedural default occurs when a defendant attempts to raise a new challenge to a conviction or sentence in a Section 2255 motion that could have been, but was not, raised on appeal. *Id.* at 1234. Accordingly, issues that could have been raised on direct appeal are generally not actionable in a Section 2255 proceeding unless the procedural default is excused. To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice or actual innocence. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). The government can waive the affirmative defense of procedural default. *Seabrooks v. United States*, 32 F. 4th 1375, 1384 (11th Cir. 2022).

The district court is not required to grant a petitioner an evidentiary hearing if the Section 2255 motion "and the files and records of the case conclusively show

that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**B. Ineffective Assistance of Counsel Standard**

Ineffective assistance of counsel claims are properly raised by a Section 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) her attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland*, 466 U.S. 668, 687 (1984). To prevail, the defendant bears the burden of proof to show both deficient performance and prejudice. *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001). The court need not address both components of the inquiry "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The standard for the performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Further, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish that counsel's performance was unreasonable, a defendant must show that the representation was "patently unreasonable" and that "no competent attorney" would have taken the

action counsel took. *Dingle v. Sec'y for the Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

In other words, "[t]he test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the standard is whether a "reasonable lawyer … in the circumstances …" could have acted as the attorney in question did. *Id.*

Under the prejudice prong, the defendant must show that, but for counsel's deficient performance, the result of the case likely would have been different. *Strickland*, 466 U.S. at 694. A focus on outcome alone is not appropriate in all cases because "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."[4] *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding …." *Id.* at 370.

---

[4] In *Lockhart*, the Court elaborated on what it considered a windfall by referring to the facts in *Nix v. Whiteside*, 475 U.S. 157, 175 (1986), where a defendant claimed ineffective assistance of counsel based on his attorney's refusal to present perjured testimony. *Lockhart*, 506 U.S. at 370. The attorney's refusal could not result in prejudice, even if there was a reasonably probability that presenting the perjured testimony would have changed the jury's verdict and thus the outcome of the trial. *Id.* The Court explained that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id.*

## III. DISCUSSION

Ms. Price raises two grounds for relief in her Section 2255 motion. In Ground One, Ms. Price suggests that the district court incorrectly calculated loss for her sentencing guideline range. ECF No. 66 at 4. Ms. Price's supporting facts for Ground One are as follows:

> As a part of my plea the government had dropped count 5, an intended loss of $86,252.32. According to my PSI and Statement of Facts provided by the prosecution [Counts] 1-4 were approximately $234,450.46. Sentencing was performed based on the total of counts 1-5, which was one bracket above the guidelines that I had plead[ed] to. While I am thankful that the honorable judge had sentenced me on the lower end of the bracket, (33-41 months) I am hoping that they will consider a reduction in sentence based on the actual dollar amount indicated on my September 20, 2022, criminal monetary penalties worksheet, showing $233,065.85. A new sentencing range for this figure would fall between 27 [and] 33 months. I am hopeful that the judge will once again look favorably upon me and reduce my sentence by 6 months so that I will once again fall into the low end of the new bracket.

*Id.*

In Ground Two, Ms. Price alleges ineffective assistance of counsel. ECF No. 66 at 5. Ms. Price's supporting facts for Ground Two are as follows:

> I had raised concerns to my court appointed [counsel] about errors in my [Presentence Investigation Report]. I was told that the dollar amounts for counts 1-5 would not affect my sentencing and there was no grounds to appeal, despite count 5 being dismissed. If my concerns and objections to my PSI were addressed at the time they were

> raised, there could have been a direct impact to my sentencing.
>
> In addition, at my sentencing hearing the judge asked if there would be an impact to the ability to pay restitution. Counsel stated no, without consulting me. Unfortunately, and regrettably, the sentence imposed by the honorable judge had a significant impact to my current and future ability to pay restitution.

*Id*.

**A. Ground One: Loss Calculation**

The Government raised the defense of procedural default as to Ground One. ECF No. 70 at 13. Ms. Price's argument in Ground One is procedurally defaulted because it could have been raised on direct appeal. *Seabrooks*, 32 F. 4th at 1383-84. Even so, the loss amount, which included intended loss attributable to Count Five, was properly calculated.

As described in Ms. Price's supporting facts for Ground One, she contends that the loss amount erroneously included an intended loss of $86,252.32. ECF No. 66 at 4. This amount is attributed to Count Five of Ms. Price's indictment, which was dismissed by the Government. ECF Nos. 37 at ¶ 2.a, 49 at ¶ 2. Ms. Price contends that the loss amount should be $233,065.85, which is the amount that was ordered for restitution. ECF No. 62 at 6.

Restitution and loss for guidelines purposes are calculated differently, and thus, are not interchangeable. *See United States v. Bane,* 720 F. 3d 818, 827 (11th

Cir. 2013) (explaining that loss under the guidelines for sentencing purposes is not the same as restitution for a victim's injury). Specifically, restitution is ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990). Courts account for a wider range of losses reflecting culpability for sentencing purposes than what can be included in a restitution order.

Under Section 1B1.3 of the guidelines, district courts must consider all "relevant conduct," in calculating a defendant's offense level. *See Black v. United States*, 373 F.3d 1140, 1143-44 (11th Cir. 2004) (offense conduct and any other relevant conduct are considered in applying guideline provisions). Relevant conduct can include conduct for which the defendant was not charged or convicted, so long as the government proves such conduct by a preponderance of the evidence. *United States v. Hamaker,* 455 F. 3d 1316, 1336 (11th Cir. 2006). Accordingly, a dismissed count of an indictment that is part of a common scheme to defraud, such as Count Five in Ms. Price's case, is appropriately considered in determining the loss amount for guideline sentencing purposes. *United States v. Bostic*, 385 Fed. App'x 888, 889-91 (11th Cir. 2010) (no error in including intended loss from dismissed substantive counts of bank fraud in loss amount).

The Sentencing Guidelines instruct courts to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" that were part of the "same course of conduct or common scheme or plan as the offense of conviction." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015) (citing U.S.S.G. §§ 1B1.3(a)(1)(A) and (a)(2)). Importantly, the preponderance of the evidence standard applies to sentencing guideline calculations, including the calculation of loss amounts. *See Hamaker*, 455 F.3d at 1336.

Therefore, the total loss amount in Ms. Price's case properly incorporated the $86,252.32, as it was relevant conduct which was part of the same "common scheme or plan as the offense of conviction." *Wilson*, 788 F.3d at 1317. There is no support for Ms. Price's assertion that total loss should have been calculated as $233,065.85, which was her restitution amount.

In summary, Ground One is procedurally defaulted because it could have been raised on direct appeal but was not. Since there was no error in loss calculations, Ms. Price has not demonstrated cause and prejudice or a miscarriage of justice, as is necessary to overcome a procedural default. *See McKay*, 657 F.3d at 1196. For those reasons, Ground One fails.

**B. Ground Two: Ineffective Assistance of Counsel**

Ms. Price raises multiple complaints in her ineffective assistance of counsel claim, including that (1) Attorney Dykes failed to adequately address her objections to the Presentence Investigation Report, (2) Attorney Dykes informed her that there were no grounds to appeal despite Count Five of the indictment being dismissed, and (3) Attorney Dykes improperly told the court that Ms. Price's sentence would not impact her ability to pay restitution. ECF No. 66 at 5.

To prevail on this claim, Ms. Price must demonstrate that (1) her attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding probably would have been different. *Strickland*, 466 U.S. at 687. Ms. Price fails to meet her burden under both the performance and prejudice prongs for each of her three claims.

***1. Performance***

Ms. Price's first complaint in Ground Two about Attorney Dykes' handling of objections to the Presentence Investigation Report is based on Ms. Price's misunderstanding that the intended loss from Count Five should not have been included in the loss amount. As explained in the analysis of Ground One, there was

no basis to exclude the intended loss from Count Five in the loss amount calculation. Furthermore, Attorney Dykes addressed these issues with Ms. Price multiple times.

Prior to the sentencing hearing, Attorney Dykes answered Ms. Price's concerns about total loss in an email exchange, stating as follows: "As I mentioned before, we will have to argue about the intended loss at your sentencing. Even if that count is dropped (or stays on), the driving number will be how much the government can convince the court was the total amount of fraud intended (even if the money never made it to you)." ECF No. 70-2. Ms. Price later responded "[t]hat covers everything. I really appreciate all of your hard work and the effort you put forth in my case." ECF No. 70-3.

After the sentencing hearing, Attorney Dykes once again clarified this matter for Ms. Price: "Also, don't forget that there is a difference between the loss amount and restitution. The loss amount includes money that you didn't actually get but tried to. For example, the checks from Saint Andrews management are included in the loss amount but not included in the restitution amount." ECF No. 71-1 at 15.

These exchanges show that Attorney Dykes responded to Ms. Price's objections correctly and in accordance with professional standards.

Ms. Price's second complaint in Ground Two is: "I was told that the dollar amounts for counts 1-5 would not affect my sentencing and there was no grounds to

appeal, despite count 5 being dismissed." ECF No. 66 at 5. As discussed in Ground One, the loss amount properly included the intended loss from Count Five. The fact that Count Five was dismissed but the loss amount was still considered, did not provide a valid argument for appeal. Therefore, Attorney Dykes' decision to advise against what would have been frivolous grounds for appeal did not fall below professional standards of conduct.

Lastly, Ms. Price's assertion that Attorney Dykes did not properly inform the court about her inability to pay restitution is unsupported by the record. The Presentence Investigation Report includes an analysis of Ms. Price's financial condition and ability to pay. ECF No. 49 at 13. The court acknowledged Ms. Price's financial condition at the sentencing hearing, stating "the likelihood of that ever getting fully paid off, in all honesty, is fairly pretty slim." ECF No. 64 at 27. On that point, the court concluded that "the need for restitution, while often a very significant driving factor in my sentences for financial crimes, is not one that gets as much weight here just because of the realities of the circumstances." *Id.* There is no indication that Attorney Dykes failed to ensure that the court was informed of Ms. Price's financial circumstances in compliance with professional standards.

In conclusion, Ms. Price failed to satisfy her burden to show deficient performance for each of her three complaints against Attorney Dykes.

### *2. Prejudice*

Ms. Price's claims also fail on the prejudice prong. As previously stated, to satisfy the prejudice prong Ms. Price must show that, but for counsel's deficient performance, the result of the case likely would have been different. *Strickland*, 466, U.S. at 694. Ms. Price has not shown what Attorney Dykes could or should have done differently to change the outcome of the case.

Contrary to Ms. Price's arguments, there is no basis to make the loss amount the same as the restitution amount, and no basis to exclude the intended loss attributable to Count Five. Because Ms. Price's ability to pay was given appropriate consideration by the court, she has not shown that her sentence likely would have been different had Attorney Dykes provided additional information concerning her ability to pay restitution.

Thus, Ms. Price has not met her burden to show she was prejudiced by any deficient performance by Attorney Dykes. Accordingly, relief on Ground Two must be denied.

## IV. CONCLUSION

Ms. Price's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 should be denied. An evidentiary hearing is not necessary to resolve

Ms. Price's claims as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## V. CERTIFICATE OF APPEALABILTIY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1. The motion to vacate, set aside, or correct sentence (ECF No. 66) be DENIED.

2. A certificate of appealability be DENIED.

3. The clerk shall update Ms. Price's address and mail a copy of this Report and Recommendation to her at: 2604 Bruce Avenue, Panama City Beach, FL 32408.

Done on July 23, 2026.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge